UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   Case No.8:16-cr-314-MSS-JSS

NEIL JASON MERRITT    ///

**DEFENDANT'S FACTUAL OBJECTIONS, OBJECTIONS TO RECOMMENDED SENTENCE, AND MEMORANDUM IN SUPPORT OF A REASONABLE 3553 SENTENCE**

**COMES NOW THE DEFENDANT, Neil Jason Merritt**, by and through his undersigned counsel, pursuant to 18 U.S.C. s.3553, and makes these his Factual Objections, Objections to Recommended Sentence, and Memorandum in support of a Reasonable 3553 Sentence, and *respectfully* says:

**Factual Objections to the PSR**

The Defendant objects to the revised psir's allegations in psir **paragraph 6** (that he was "involved in a drug smuggling venture aboard...") and he objects to the assertion in **paragraph 8** (that "there were no other vessels detected within 24 NM on radar and within 9 NM visually") (as the record indicates in trial, this was a many hours' investigation and following of the SV Buff, not a specific moment in time when memorialized certainty as to the presence of other vessels can be assured or ruled out) [reference to the psir (presentence investigation report) is to doc.93 of 4/12/17].

**Background of the Defendant**

The Defendant is a 44 year old male from Trinidad, Republic of Trinidad and Tobago (9/14/72), psir page 3, whose "childhood was rough and that there was not always enough food for the family to eat." psir paragraph ("p") 31.  The Defendant has been in a

1

common law marriage with Melisa Teng, age 33, p.39. Ms. Teng works as a building inspector, and the Defendant and she have three minor children together, 11, 6, and 3, p.7. The Defendant admirably has his 76 year old mother living with Ms. Teng, the children, and him, helping her in her older age, p.40, 34. Ms. Teng has reported to probation that she "is very stressed due to being the only parent to three children. She noted that it is financially stressful and time consuming without any help from her husband." [while he has been incarcerated], p.39. Since his arrest, the Defendant is worried because it looks like the $150,000 mortgage on his home is in jeopardy, resulting in a foreclosure, p.55. As reported, the Defendant has maintained a livelihood to support his family and mother, along with his employed common law wife, Ms. Teng, p.50-52, 7.

**Objection to Recommended Sentence as resulting in an "unreasonable" sentence, one greater necessary to accomplish the goals of sentencing (18 USC 3553(a)(1)-(7)) and Motion for Downward variance sentence to the 10 year min/man required by statute**

Paragraph 58 Objection: to a 188-235 months recommended sentence and motion for downward variance sentence (total offense level 36 and criminal history category I, 188 months (15.67 years)-235 months (19.58 years)).

Both Counts of conviction carry a statutory 10 year min/man sentence, to life maximum. The Defendant moves for a downward variance to a 10 year min/man sentence on both counts, to be run concurrently.

**18 USC s.3553: 15.67 years (188 months) in prison would be an unreasonable sentence, and greater than necessary to achieve the goals of sentencing as expressed in 18 USC s.3553(a)(1)-(7) and the policies referenced therein, warranting a downward departure because:**

**1. This 44 year old Trinidadian has 24.9 more years life expectancy; Further he is 2-3 higher risk for prostate cancer because of his father's passing for same, and because he is African-Trinidadian his risk of prostate cancer and of a more aggressive form of such cancer at an earlier age onset is higher**

The life expectancy of a male from Trinidad and Tobago is 69.9 years, U.S. C.I.A. The World Factbook, *Trinidad and Tobago*, https://www.cia.gov/library/publications/the-world-factbook/geos/td.html

Further, his father died in 1991 from prostate cancer, p.33.

"If a man has a first-degree relative, meaning a father, brother, or son, with prostate cancer, his risk of developing prostate cancer is 2 to 3 times higher than the average risk. This risk increases with the number of relatives diagnosed with prostate cancer." American Society of Clinical Oncology (ASCO), http://www.cancer.net/cancer-types/prostate-cancer/risk-factors-and-prevention

The Defendant is African-Trinidadian, which puts him in a higher risk category,

"Black men have a higher risk of prostate cancer than white men. They are also more likely to develop prostate cancer at an earlier age and to have aggressive tumors that grow quickly. The exact reasons for these differences are not known and may involve socioeconomic or other factors." American Society of Clinical Oncology (ASCO), http://www.cancer.net/cancer-types/prostate-cancer/risk-factors-and-prevention

**2. He is a first offender for whom studies say recidivism is lower, has an employment history which is a lower recidivism rate, and has been in a committed common law marriage of 14 years which is a lower recidivism rate**

For this time of **first time offender**, especially of a **non-violent crime**, *the recidivism rate is extraordinarily low*. For example, those in a **Criminal History Category I**, the recidivism rate is **15.2%.** For those **who have been employed**, the rate is **12.7%**; and for those **who were ever married**, the rate is **9.8%**. *Please see* U.S. Sentencing Commission, Measuring Recidivsim: The Criminal History Computation of the Federal Sentencing Guidelines, at Exh. 9, at 28; Exh. 10, at 29 (May 2004) ["Measuring Recidivism"]. *Please see* Sentencing Commission, Recidivism and the 'First Offender,' at 13-14 (May 2004) ["First Offender"];

**3. He is an older offender for whom studies say recidivism is lower**

The Commission has recognized the advisability of revising the guidelines to take age of the offender into account. *Please see* Measuring Recidivism at 16 (noting that "[o]ffender

age is a pertinent characteristic" that would "improve [the] predictive power of the guidelines "if incorporated into the criminal history guidelines, but has recently stated that age "may be relevant" in granting a departure. USSG 5H1.1). In imposing the least sufficient to account for the need to protect the public from further crimes of this Defendant, this Court should consider the statistically low risk of recidivism presented by Defendant's history and characteristics. *Please see* e.g., U.S. v. Urbina, slip op., 2009 WL 565485, *3 (E.D. Wis. Mar. 5, 2009) (considering low risk of recidivism indicated by Defendant's lack of criminal history, positive work history, and strong family ties); U.S. v. Hamilton, 323 Fed. Appx. 27, 31 (2d Cir. 2009) ("the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); U.S. v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007) (affirming below guidelines sentence based on defendant's age, which made it unlikely that he would be again involved in a violent crime); U.S. v. Cabrera, 567 F. Supp. 271, 279 (D. Mass. 2008) (granting variance because defendant's "with zero criminal history points are less likely to recidivate than all other offenders"); *Simon v. U.S.*, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (basing variance in part on Defendant's age of 50 upon release because recidivism drops substantially with age); U.S. v. Nellum, 2005 WL 300073 at *3 (N.D. Ind. Feb. 3, 2005) (granting variance to 57 year old defendant because recidivism drops with age); U.S. v. Ward, 814 F. Supp. 23, 24 (E.D. Va. 1993) (granting departure based on defendant's age as first time offender since guidelines do not "account for the length of time a particular defendant refrains from criminal conduct "before committing his first offense).

**4. The harsh effect incarceration has on innocent family members**

The harsh effect incarceration can have on innocent family members is a factor courts can consider under s.3553(a), *Defending a Federal Criminal Case, 2010 Edition,* Federal Defenders of San Diego, Inc. ("*Federal Defender*") at p.17-864, section 17.05.18.01, citing to various cases, including U.S. v. Antonakopoulos, 399 F.3d 68 (1st Cir. 2005); *U.S. v. Taylor*, 280 Fed. App'x 397 (5th Cir. 2008); *U.S. v. Dominguez*, 296 F.3d 192 (3d Cir. 2002); *U.S. v. Prisel*, 316 Fed. App'x 377 (6th Cir. 2008); *U.S. v. Owens*, 145 F.3d 923 (7th Cir. 1998); *U.S. v. Lehmann*, 513 F.3d 805 (8th Cir. Jan. 17, 2008); *U.S. v. Menyweather*, 431 F.3d 692 (9th Cir. 2005); *U.S. v. Leon*, 341 F.3d 928 (9th Cir. 2003); *U.S. v. Aguirre*, 214 F.3d 1122 (9th Cir. 2000); *U.S. v. Garcia-Salas*, 260 Fed. App'x 27 (10th Cir. 2007); *U.S. v. Gauvin*, 173 F.3d 798 (10th Cir. 1999); *U.S. v. Davis*, 2008 WL 2329290 (S.D.N.Y. June 5, 2008); *U.S. v. Crawford*, 2007 WL 2436746 (E.D. Wis. Aug. 22, 2007); *U.S. v. Boeka*, 2006 WL 3789499 (D. Neb. Dec. 20, 2006); *U.S. v. Bortnick*, 2006 WL 680544 (E.D. Pa. March 15, 2006); U.S. v. Bailey, 369 F. Supp. 2d 1090 (D. Neb. 2005); *U.S. v. Manasrah*, 347 F. Supp. 2d 634 (E.D. Wis. 2004); *U.S. v. Mateo*, 299 F. Supp. 2d 201 (S.D.N.Y. 2004); *U.S. v. Colp*, 249 F.Supp. 2d 740 (E.D. Va. 2003); *U.S. v. Lopez*, 28 F. Supp. 2d 953 (E.D. Pa. 1998);

**5. After a significant sentence term in prison, at some point, studies say, longer sentences lose any more efficacy at deterence**

"(b) To afford adequate deterrence to criminal conduct."

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006) "Three National Academy of Science panels… reached that conclusion, as has every major survey of evidence." Id.; *Please see also* Zvi D. Gabbay, Exploring the Limits of the Rerstrative Justice Paradigm: Restorative Justice and Sentence Severity: An Analysis of Recent Research (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European Countries. Id. at 1. It examined the effects of changes to both the certainty and severity of punishment. Id. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime

5

rates…were not sufficient to achieve statistical significance." Id. at 2. The report concluded that the "studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." Id. at 1.

**Wherefore, the Defendant, Neil Jason Merritt,** by and through his undersigned counsel, prays this Honorable Court enter its order imposing a reasonable sentence.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished to the U.S. Attorney's Office, and all electronically connected parties, Via Electronic Filing, on Monday May 1, 2017.

*Respectfully* **submitted,**

*/s/ Jorge León Chalela*

**JORGE LEÓN CHALELA, Esq.**
**Jorge León Chalela, P.A.**
P.O. Box 173407
Tampa, Florida 33672
Office: (813) 221-5600
Personal Cell: (727) 415-4286
Fax: (813) 350-7801
chalelalaw@yahoo.com
FBN: 73245
Attorney for Defendant, Neil Jason Merritt
